## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **ROTOR BLADE, LLC**, | ) | |
| | ) | |
| **Plaintiff**, | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **Case No. 2:21-cv-00190-AKK** |
| **SIGNATURE UTILITY** | ) | |
| **SERVICES, LLC, et. al.,** | ) | |
| | ) | |
| **Defendants**. | ) | |

## <u>MEMORANDUM OPINION</u>

This case arises out of a feud between Rotor Blade, LLC, and one of its competitors in the aerial vegetation management industry, Signature Utility Services, Inc. Rotor Blade alleges that Signature and its principal owners and officers, Robert Lane and Michael Burford, have stolen virtually every aspect of Rotor Blade's business model. Allegedly, the defendants replicated Rotor Blade's patented technology and methods, pilfered its confidential information and documents, and systematically lured away seventeen of its twenty employees. Accordingly, Rotor Blade pleads claims of patent infringement, violations of federal and state trade secrets laws, and tort claims including civil conspiracy, unfair competition, conversion, tortious interference, and breach of fiduciary duty.

Rotor Blade filed its complaint in this action on February 8, 2021. Doc. 1. On March 24, 2021, Rotor Blade amended its complaint as of right. Doc. 5. Two days later, Rotor Blade filed a motion for preliminary injunction, doc. 7, and a motion for expedited discovery, doc. 9. The defendants appeared and waived service on April 5, 2021. Docs. 11–16. A week later, Rotor Blade filed a motion for limited discovery. Doc. 18. Rather than respond to the motion for preliminary injunction, the defendants filed a motion to dismiss on April 23, 2021. Doc. 25. The court ordered briefing on the motion to dismiss, doc. 27, and granted the parties leave to exceed the court's usual page limits, doc. 21. Meanwhile, Rotor Blade filed a motion for expedited briefing on its earlier motion for discovery. Doc. 33. The defendants' motion to dismiss is now fully briefed, docs. 28 & 29, and ripe for review. For the following reasons, the motion is due to be granted in part and denied in part.

## I.

When reviewing a motion to dismiss under Rule 12(b)(6), the court "must accept all facts in the complaint as true and view those facts in the light most favorable to the plaintiff." *Sun Life Assurance Co. v. Imperial Premium Fin., LLC*, 904 F.3d 1197, 1207 (11th Cir. 2018). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Although "detailed factual allegations" are not required, mere "labels and

conclusions" or "a formulaic recitation of the elements of a cause of action" are insufficient. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## II.

Rotor Blade and Signature provide airborne vegetation management services to utilities, railroads, energy companies, and contractors. Doc. 5 at 3–4. Essentially, they trim overgrown trees near sensitive infrastructure by suspending large aerial saws from helicopters. *Id.* at 4. The saw blades either hang vertically from the helicopters to cut protruding tree branches or hang horizontally to level treetops. *Id.* at 5–6. Rotor Blade entered this industry in 2008 and maintains its principal place of business in South Carolina whereas Signature began its operations in 2018 and maintains its principal place of business in Alabama. *Id.* at 3–4, 11.

Given the risks associated with hanging saws from helicopters, the Federal Aviation Administration ("FAA") heavily regulates this industry and requires extensive documentation before authorizing aerial saw operations. *Id.* at 4–5. Over the course of its business, Rotor Blade has developed many documents that allow it to operate safely and comply with FAA regulations. *Id.* at 5–6. Those documents include various manuals and training materials, logs and recordkeeping forms, audit notes, and inventory and maintenance checklists. *Id.* at 6.

In 2015, Rotor Blade hired Robert Lane, who lacked any prior experience in aerial vegetation management, as a member of its ground crew. *Id.* at 6–7. The next

year, one of Rotor Blade's owners began teaching Lane the "business fundamentals" of aerial vegetation management. *Id.* at 7. Eventually, Rotor Blade's top salesman began training Lane and exposing him to Rotor Blade's customers and potential customers, with whom Lane developed relationships. *Id.* at 8. At the same time, Lane had access to Rotor Blade's documents outlining its practices for safe aerial saw operations. *Id.* In December 2017, Rotor Blade promoted Lane to General Manager, the highest-ranking position at Rotor Blade. *Id.*

Meanwhile, on February 9, 2016, Rotor Blade applied for a patent to protect its "novel invention and method of use associated with its topping saw design." *Id.* at 7. The novelty of Rotor Blade's topping saw, which hangs horizontally to cut treetops, stems from the saw's ability to "hang to one side of the helicopter so that" the pilot can view its operation. *Id.* at 5–6. Lane had actual knowledge of the pending patent application, *id.* at 8, which the United States Patent and Trademark Office ("USPTO") approved at the end of 2020, issuing United States Patent No. 10,869,433 B1 ("the '433 Patent"), entitled "Tree Trimming Apparatus and Method," *id.* at 7.

In spring 2017, Lane met Michael Burford at a conference, and the two agreed to start a new aerial vegetation management business using Rotor Blade's materials. *Id.* at 9. Burford had no prior experience in the industry. *Id.* Over the next ten months, Lane used Rotor Blade's resources to meet with Burford in Alabama to

further their plan. *Id.* On one such trip, Lane took one of Rotor Blade's vertically hanging aerial saws with him to a laser fabrication facility in Alabama so that the facility could duplicate the saw. *Id.* at 9–10. Rotor Blade does not allege that any patent protects the vertical saw.

On May 10, 2018, Lane abruptly resigned from Rotor Blade. *Id.* at 10–11. That same day, the Alabama Secretary of State received documents creating Signature Utility Services, Inc. *Id.* at 11. Although the documents did not identify Lane, he served as Signature's president. *Id.* Around the same time, Lane used a copy of Rotor Blade's FAA-approved operations manual to create a nearly identical manual for Signature. *Id.* at 12. On Signature's behalf, Lane submitted the new manual to the FAA for certification. *Id.* Meanwhile, and within days of Lane's resignation from Rotor Blade, Lane and Burford offered Rotor Blade's chief pilot, Randy Jernigan, a job at Signature. *Id.* at 12–13. Jernigan eventually accepted the offer and resigned from Rotor Blade. *Id.* at 13–14. Using information and documents acquired from Rotor Blade, Jernigan helped Lane and Burford initiate Signature's operations. *Id.* at 14.

Lane and Burford used Rotor Blade's materials to reduce the time necessary for Signature to become operational. *Id.* at 14–15. Lane took advantage of an opportunity he learned of through Rotor Blade to identify and purchase a helicopter for Signature. *Id.* at 15. Lane also shared with Burford a list of potential customers

he met through Rotor Blade.  *Id.* at 16.  Moreover, from May 2018 to June 2019, Signature hired seventeen of Rotor Blade's then-twenty employees, including Jernigan.  *Id.* at 16–17.  Lane convinced one of those employees to take two of Rotor Blade's saws to Signature's helicopter hangar in Alabama, where a laser fabricator reproduced them.  *Id.* at 18–19.  One of those saws was the horizontal topping saw covered by the '433 Patent.  *Id.*

## III.

Rotor Blade pleads multiple claims, including (1) patent infringement, (2) federal and state violations of trade secrets laws, (3) civil conspiracy, (4) unfair competition, (5) conversion, (6) tortious interference with contractual or business relationships, and (7) breach of fiduciary duty.[1]  The defendants have moved to dismiss all of these claims either in full or in part.  Doc. 25.  The court will address each claim below.[2]

---

[1] Rotor Blade concedes that Count X—aiding and abetting breach of fiduciary duty—is due to be dismissed.  Doc. 28 at 5.

[2] Rotor Blade asks the court to strike the motion to dismiss, doc. 25, because the defendants purportedly failed to comply with Appendix III of the Scheduling Order.  Doc. 28 at 5–6.  Appendix III requires defendants to confer with plaintiffs' counsel "if [defense] counsel . . . believes that factual allegations in a complaint do not meet Rule 8's notice requirement."  Doc. 27 at 3.  A footnote to the appendix further clarifies that "[t]he obligation to confer pertains only to Rule 12(b)(6) motions to dismiss based on the sufficiency of the factual allegations in the complaint.  There is no such prerequisite for other motions to dismiss."  *Id.* at 3 n.2.  The defendants do not claim that they lack sufficient notice of Rotor Blade's claims, as required by Rule 8.  Rather, they contend that Rotor Blade's allegations do not entitle it to relief as a matter of law.  The court did not intend for its order to require the defendants to allow Rotor Blade to cure *any* alleged or perceived deficiencies in the amended complaint.  Accordingly, the court declines to strike the motion to dismiss.

## A.

Rotor Blade alleges that Signature and Lane infringed all claims of the '433 Patent by practicing "each step" of the patent's claimed methods.[3] Doc. 5 at 21. Allegedly, Signature and Lane committed direct infringement in violation of 35 U.S.C. § 271(a) and indirect infringement in violation of § 271(b) and (c). Rotor Blade also alleges that Signature and Lane had actual knowledge of and willfully infringed the '433 Patent. Doc. 5 at 23.

## 1.

Under 35 U.S.C. § 271(a), "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent." Rotor Blade alleges that Signature and Lane committed direct patent infringement under § 271(a) through their "continued offer to sell, sale, and practice" services and methods covered by the '433 Patent. Doc. 5 at 23. Signature and Lane moved to dismiss Rotor Blade's direct infringement claim (1) in part against them to the extent that the amended complaint seeks damages for conduct that occurred

---

[3] Rotor Blade does not allege that Burford infringed the '433 Patent. Doc. 5 at 21; *see also* doc. 28 at 10 ("[Rotor Blade] only charged defendants Signature and Lane with patent infringement in Count I.").

before the '433 Patent issued; and (2) in full against Lane, as Signature's co-owner and president. Doc. 25 at 6–8.

### a.

"It is well established that the exclusive rights conferred by a United States patent do not take effect until the patent formally issues." *JAT Wheels, Inc. v. DB Motoring Grp., Inc.*, No. CV 14-5097-GW(AGRX), 2016 WL 9453798, at *2 (C.D. Cal. Feb. 11, 2016). In other words, "[p]atent rights are created only upon the formal issuance of the patent." *GAF Bldg. Materials Corp. v. Elk Corp. of Dallas*, 90 F.3d 479, 483 (Fed. Cir. 1996). Thus, one who holds a "patent application has no legally enforceable rights regarding any conduct that might constitute infringement of its patent before the date that the patent officially issues." *JAT Wheels*, 2016 WL 9453798, at *2. In short, "[a] patent application cannot be infringed." *Abbey v. Mercedes Benz of N. Am., Inc.*, 138 F. App'x 304, 307 (Fed. Cir. 2005).

The USPTO did not issue the '433 Patent until December 22, 2020. Doc. 5 at 7. For that reason, Signature and Lane contend correctly that there was no actionable infringement before that date. Doc. 25 at 6. Perhaps in recognition of this settled law, Rotor Blade observes that "[a]lthough acts which may ultimately constitute patent infringement may take place before the issue date of a U.S. Patent, damages generally do not begin to run until after the patent has issued." Doc. 28 at 13. Rotor

8

Blade adds that its amended complaint "does not presently claim damages accruing before the issue date of the patent."[4] *Id.*

Rotor Blade does not address, however, the defendants' argument that all patent infringement claims based on alleged conduct occurring before the '433 Patent issued are due for dismissal. Instead, Rotor Blade simply reiterates that "defendant Lane had actual knowledge of [Rotor Blade's] pending patent application." Doc. 28 at 13 n.6.[5] But the fact remains that "liability for infringing claims . . . could not attach to any actions taken before the USPTO issued those claims," *Karl Storz Endoscopy-Am. Inc. v. Integrated Med. Sys. Int'l, Inc.*, 400 F. Supp. 3d 1248, 1256 (N.D. Ala. 2019), and Rotor Blade does not and cannot seek provisional patent rights or damages. Accordingly, to the extent Rotor Blade pleads

---

[4] Nor could it. Although 35 U.S.C. § 154(d) provides for damages that take place before a patent issues if the infringer "had actual notice of the published patent application," *id.* § 154(d)(1)(B), Rotor Blade elected not to publish its patent application, doc. 25-1 at 23. Rotor Blade complains that facts about its underlying patent application are outside of the amended complaint. Doc. 28 at 13 n.6. But Rotor Blade refers to the patent application in the amended complaint, doc. 5 at 7–8, relies on the application throughout its response brief, and does not contest its authenticity. Accordingly, although the defendants attached the application to their motion to dismiss, the court can consider the document without converting the motion to dismiss into one for summary judgment. *See Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002).

[5] *See also id.* at 15 ("The [first amended complaint] contains sufficient facts to support [Rotor Blade's patent infringement] claims. Defendant Lane had actual knowledge of [Rotor Blade's] patent application.").

claims for direct patent infringement based on conduct occurring before the USPTO issued the '433 Patent, those claims are due to be dismissed.[6]

## b.

Lane argues separately for the dismissal of the direct infringement claim against him. In the amended complaint, Rotor Blade alleges that Lane is an owner (or member) and officer of Signature, which is an LLC. Doc. 5 at 3, 11. Lane contends that, as a member, he cannot be held liable for Signature's alleged tortious conduct. Doc. 25 at 7. Under Alabama law, "[a] member of a limited liability company is not liable, solely by reason of being a member, for a debt, obligation, or liability of the limited liability company or a series thereof, whether arising in contract, tort, or otherwise . . . ." Ala. Code § 10A-5A-3.01. But a member may nonetheless be liable for his "own acts or omissions to the extent such actions or omissions would be actionable, either in contract or in tort, against the member if the member were acting in an individual capacity." Ala. Code § 10A-5A-3.01 cmt. "Patent infringement is a tort," and generally, "a corporate officer is personally liable for his tortious acts, just as any individual may be liable for a civil wrong." *Wordtech Sys., Inc v. Integrated Networks Sols., Inc.*, 609 F.3d 1308, 1313 (Fed. Cir. 2010)

---

[6] The defendants did not move to dismiss Rotor Blade's direct patent infringement claim against Signature for alleged infringement after the '433 Patent issued. Doc. 25 at 1.

(quotation omitted).[7] Lane can thus be held liable for any infringement that he personally committed, even if done on Signature's behalf.

Rotor Blade generally alleges that "defendants Signature and Lane have marketed, sold, and offered for sale tree topping services that include the use of . . . methods covered by one or more claims of the '433 Patent." Doc. 5 at 21; *see also id.* at 21–24. Accordingly, Lane observes that there are no allegations that he infringed the '433 Patent "personally, as an individual." Doc. 25 at 7. Lacking such allegations, Lane argues that he can only be held liable as a member for Signature's patent infringement if Signature's "corporate veil" is pierced. *Id.* at 8. Rotor Blade argues that the amended complaint supports veil piercing and holding Lane liable as Signature's "alter ego." Doc. 28 at 13.

The corporate veil shields a corporate officer "from personal liability for direct infringement committed" on the corporation's behalf, unless the corporation is the officer's alter ego. *Wordtech Sys.*, 609 F.3d at 1313. The court determines whether an officer is "personally liable for the direct infringement of the corporation under § 271(a)" by invoking "those general principles relating to piercing the corporate veil." *Id.* (quoting *Orthokinetics, Inc. v. Safety Travel Chairs, Inc.*, 806 F.2d 1565, 1579 (Fed. Cir. 1986)). The three "typical justification[s] for piercing

---

[7] *See* also *Ex parte McInnis*, 820 So. 2d 795, 798–99 (Ala. 2001) ("A corporate agent who personally participates, albeit in his or her capacity as such agent, in a tort is personally liable for the tort.") (quoting *Sieber v. Campbell*, 810 So. 2d 641, 645 (Ala. 2001)).

the corporate veil" under Alabama law are "(1) inadequacy of capital; (2) fraudulent purpose in conception or operation of the business; or (3) operation of the corporation as an instrumentality or alter ego." *Mama's Enterprises, LLC v. United States*, 883 F. Supp. 2d 1128, 1135 (N.D. Ala. 2012) (quoting *First Health, Inc. v. Blanton*, 585 So. 2d 1331, 1334 (Ala. 1991)). Although courts originally applied those principles to corporations, "Alabama law also allows veil-piercing of a limited liability company," such as Signature. *Stewart v. Bureaus Inv. Grp. No. 1, LLC*, 24 F. Supp. 3d 1142, 1153 (M.D. Ala. 2014).

Because Rotor Blade asserts the "alter ego" theory to justify piercing Signature's corporate veil and holding Lane liable, doc. 28 at 13, it must have alleged facts plausibly showing that (1) Lane maintains "complete control and domination of [Signature's] finances, policy and business practices"; (2) he "misused" that control; and (3) this misuse "proximately cause[d] the harm or unjust loss complained of." *Messick v. Moring,* 514 So. 2d 892, 894–95 (Ala. 1987). The court also considers whether "corporate and personal funds are intermingled and corporate funds are used for personal purposes . . . ." *Simmons v. Clark Equipment Credit Corp.,* 554 So. 2d 398, 401 (Ala. 1989) (quotation omitted).

Rotor Blade points to the following allegations to support its contention that Signature is Lane's alter ego: (1) the defendants formed Signature on the same day that Lane resigned from Rotor Blade; (2) the defendants concealed the "ownership

interests of defendants Lane and Burford" in Signature's formation documents; and (3) the defendants concealed Lane's role as "President" in the formation documents. Doc. 28 at 13–14. But these allegations are inadequate to justify piercing Signature's corporate veil. For starters, Rotor Blade has not alleged that Lane maintains complete control of Signature. Although Lane is a co-owner and President of Signature, Rotor Blade's allegations establish that defendant Robert Burford is also a Signature officer and its "majority owner." Doc. 5 at 4. Indeed, Rotor Blade alleges that Lane currently owns only forty percent of Signature. *Id.* at 11. Moreover, Rotor Blade does not plead that Lane misused his purported control of Signature. Thus, because Rotor Blade does not allege facts plausibly showing that Lane dominated Signature or misused his power in a way that harmed Rotor Blade, the claim for direct infringement against Lane is due to be dismissed.

### c.

The defendants also moved to dismiss the willful infringement claim. Doc. 25 at 12–14. Under 35 U.S.C. § 284, courts may award enhanced damages in patent disputes involving "willful or bad-faith infringement." *Polara Eng'g Inc. v. Campbell Co.*, 894 F.3d 1339, 1353 (Fed. Cir. 2018) (quoting *Halo Elecs., Inc. v. Pulse Elecs., Inc.*,136 S. Ct. 1923, 1930 (2016)). Because Lane cannot be held liable for Signature's alleged direct infringement, the court agrees that Rotor Blade's claim for willful infringement against Lane should be dismissed. But whether the

willfulness claim should go forward against Signature is a separate issue since Signature could be held liable for any direct infringement it may have committed after the '433 Patent issued. *See supra* note 6.

The Supreme Court has explained that "enhanced damages under the Patent Act . . . are not to be meted out in a typical infringement case, but are instead designed as a 'punitive' or 'vindictive' sanction for egregious infringement behavior." *Halo Elecs., Inc.*, 136 S. Ct. at 1932. "The sort of conduct warranting enhanced damages has been variously described . . . as willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate." *Id.* Ultimately, "[w]illful infringement is a question of fact," *Polara Eng'g Inc.*, 894 F.3d at 1353, and courts should consider "the particular circumstances of each case." *Halo Elecs., Inc.*, 136 S. Ct. at 1933. It follows that the court cannot determine the "egregiousness" of Signature's alleged conduct "at the dismissal stage, so it instead merely looks to [the amended] complaint for factual allegations sufficient to plausibly demonstrate subjective willfulness." *Karl Storz Endoscopy-Am. Inc.*, 400 F. Supp. 3d at 1258.

The defendants say that Rotor Blade has merely alleged that the defendants knowingly infringed the '433 Patent, which, they argue, cannot plausibly show the requisite level of egregious behavior necessary to support a claim for willful infringement. Doc. 25 at 12–13. But Rotor Blade has alleged more than the

defendants' knowledge of the '433 Patent. The amended complaint details what Rotor Blade calls the defendants' "systematic scheme" to establish a competing business using various inappropriate means, including alleged patent infringement. Doc. 28 at 15. In that respect, the cases the defendants cite for the proposition that Rotor Blade's allegations are insufficient are distinguishable.[8] The defendants are correct that Rotor Blade's factual allegations regarding their allegedly infringing conduct are limited to events that occurred before the '433 Patent issued in 2020. But considering "the particular circumstances of [this] case," *Halo Elecs., Inc.*, 136 S. Ct. at 1933, the court concludes that Rotor Blade's allegations, if proven, could demonstrate willfulness.

## 2.

Even if the defendants have not directly infringed the '433 Patent, they "may still be liable for inducement" under § 271(b) or contributory infringement under § 271(c) for selling "infringing devices to customers who use them in a way that

---

[8] *See Susan McKnight, Inc. v. United Indus. Corp.*, 273 F. Supp. 3d 874, 881 (W.D. Tenn. 2017) (dismissing willfulness claim where "there [was] little more than conclusory allegations of knowledge and infringement"); *Atmos Nation, LLC v. BnB Enter., LLC*, Case No. 16-62083-CIV, 2017 WL 5004844, *2 (S.D. Fla. Aug. 22, 2017) ("Plaintiffs have pled no facts to suggest that Defendant had knowledge, let alone the circumstances indicating egregious behavior."); *NetFuel, Inc. v. Cisco Sys. Inc.*, Case No. 5:18-cv-02352-EJD, 2018 WL 4510737, *2 (N.D. Cal. Sept. 18, 2018) (noting that the "Complaint lacks any allegation that [the defendant] had actual knowledge of the existence of the Patents-in-Suit and their issuance before the filing and service of the Complaint"); *Maxell Ltd. v. Apple Inc.*, Civil Action No. 5:19-CV-00036-RWS, 2019 WL 7905455, *5 (E.D. Tex. Oct. 23, 2019) (dismissing willfulness claim because the plaintiff "alleged nothing more than knowledge of the patent application").

directly infringes the method claim."[9] *Linear Tech. Corp. v. Impala Linear Corp.*, 379 F.3d 1311, 1326 (Fed. Cir. 2004). The court next considers Rotor Blade's claims for induced and contributory indirect infringement.

### a.

Rotor Blade alleges that "Lane and Signature, acting alone or with others, are, and have been, indirectly infringing the claims of the '433 Patent . . . by actively, knowingly, and intentionally inducing direct infringement by other persons to engage in the methods and practices of services" covered by the '433 Patent. Doc. 5 at 24. The defendants argue that Rotor Blade does not plausibly allege that a party other than Signature and Lane committed direct infringement. Doc. 25 at 9. And because liability for indirect infringement depends on "the existence of direct infringement," *Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 774 (Fed. Cir. 1993), the defendants argue "[t]here can be no inducement or contributory infringement without an underlying act of direct infringement," *Linear Tech.*, 379 F.3d at 1326. Moreover, the court notes that "the direct infringer is typically someone other than

---

[9] Section 271(b) provides that "[w]hoever actively induces infringement of a patent shall be liable as an infringer." Under § 271(c), "[w]hoever offers to sell or sells within the United States . . . a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer."

the defendant accused of indirect infringement." *Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1272 (Fed. Cir. 2004).[10]

Rotor Blade makes two arguments in response. First, it contends that the amended complaint contains enough "facts to support claims of indirect infringement by Defendants' customers for whom the operations are conducted." Doc. 28 at 15. But "indirect infringement by Defendants' customers" does not establish an underlying act of direct infringement. Rather, it implies the existence of a separate claim for indirect infringement against the customers, who are not parties in this action. To the extent Rotor Blade intended to argue that the defendants induced their customers to directly infringe the '433 Patent, that argument also fails. To be sure, Rotor Blade does allege "direct infringement by other persons to engage in the methods and practices of services" covered by the '433 Patent. Doc. 5 at 24. And "a plaintiff need not identify a *specific* direct infringer if it pleads facts sufficient to allow an inference that at least one direct infringer exists." *In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*, 681 F.3d 1323, 1336 (Fed. Cir. 2012) (emphasis in original). But Rotor Blade does not cite to, and the court's review does not reveal, any facts in the amended complaint supporting an inference of a third party's direct infringement. Moreover, the defendants sell services, not equipment,

---

[10] *See also Karl Storz Endoscopy-Am. Inc.*, 400 F. Supp. 3d at 1257 ("An inducement claim requires infringing conduct by at least one third party . . . .").

and the '433 Patent contains only method claims. "A method claim is *directly* infringed only by one practicing the patented method," *Joy Techs.*, 6 F.3d at 775 (emphasis in original), which here would be the defendants, not their customers. It is thus implausible that the defendants' customers, as recipients of the defendants' services, could directly infringe the '433 Patent.

Rotor Blade also argues that even if Lane is not directly liable for Signature's alleged infringement, he is "alternatively liable for induced infringement" because he "actively assisted in Signature's direct infringement." Doc. 28 at 16. The court explained above that Signature is not directly liable for patent infringement occurring before the '433 Patent issued on December 22, 2020. But it is true that "corporate officers who actively assist with their corporation's infringement may be personally liable for inducing infringement *regardless* of whether the circumstances are such that a court should disregard the corporate entity and pierce the corporate veil." *Wordtech Sys.*, 609 F.3d at 1316 (emphasis in original) (quoting *Manville Sales Corp. v. Paramount Sys., Inc.*, 917 F.2d 544, 553 (Fed. Cir. 1990)). The amended complaint, however, does not contain a claim against Lane for inducing Signature's alleged infringement. Instead, Rotor Blade pleads that Lane and Signature, "acting alone or with others," have indirectly infringed the '433 Patent by "inducing direct infringement by other persons." Doc. 5 at 24. Rotor Blade's attempt to reframe this claim as one for indirect infringement against Lane based on

Signature's alleged direct infringement is unavailing. Accordingly, Rotor Blade's induced infringement claim under § 271(b) is due to be dismissed because Rotor Blade does not plausibly allege an underlying act of direct infringement.[11]

### b.

Rotor Blade also pleads a contributory infringement claim against Lane and Signature for "contributing to the infringement of the claims of the '433 Patent . . . by offering for sale, selling, or practicing services and methods" covered by the '433 Patent "for use in infringing systems, products, or services." Doc. 5 at 24. The defendants' arguments for dismissal of Rotor Blade's contributory infringement claim mirror their earlier arguments about induced infringement. As explained above, "[t]here can be no . . . contributory infringement without an underlying act of direct infringement." *Linear Tech.*, 379 F.3d at 1326. And as with its induced infringement claim, Rotor Blade has failed to allege facts that plausibly infer the existence of at least one direct infringer. *See In re Bill of Lading*, 681 F.3d at 1336.

---

[11] Relatedly, Rotor Blade also failed to adequately allege that the defendants knew that third parties would infringe the '433 Patent. "To state a claim for induced infringement, a plaintiff must allege that the defendant knew of the patent and that the induced acts constitute patent infringement." *Addiction & Detoxification Inst. L.L.C. v. Carpenter*, 620 F. App'x 934, 938 (Fed. Cir. 2015). Although Rotor Blade alleges that "Lane and Signature have actual knowledge of the existence of the '433 Patent," doc. 5 at 23, the amended complaint "contains no allegations regarding . . . any specific acts caused by Defendants." *Addiction & Detoxification Inst.*, 620 F. App'x at 938. "Simply repeating the legal conclusion that Defendants induced infringement or contributorily infringed does not plead 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678).

Rotor Blade's contributory infringement claim fails for an additional reason. Under § 271(c), "[c]ontributory infringement occurs if a party sells, or offers to sell, a material or apparatus for use in practicing a patented process, and that 'material or apparatus' is material to practicing the invention, it has no substantial non-infringing uses, and it is known by the party 'to be especially made or especially adapted for use in an infringement of such patent.'" *Cleveland Clinic Found. v. True Health Diagnostics LLC*, 859 F.3d 1352, 1363 (Fed. Cir. 2017) (quoting 35 U.S.C. § 271(c)). "[A] person who provides a service that assists another in committing patent infringement may be subject to liability under § 271(b) for active inducement of infringement, but not under § 271(c) for contributory infringement." *PharmaStem Therapeutics, Inc. v. ViaCell, Inc.*, 491 F.3d 1342, 1357 (Fed. Cir. 2007). Thus, "[a] party that provides a service, but no 'material or apparatus,' cannot be liable for contributory infringement." *Cleveland Clinic Found.*, 859 F.3d at 1363.

The defendants, according to the amended complaint, "offer[] for sale tree topping services." Doc. 5 at 21. Rotor Blade also alleges that Signature and Lane have violated § 271(c) "by offering for sale, selling, or practicing services and methods" covered by the '433 Patent. *Id.* at 24. A "service" or "method" is not a "material or apparatus." And although Rotor Blade repeatedly references the alleged theft of its "mechanical saw apparatus" and "tree trimming apparatus," doc. 5 at 5, 10, 23, Rotor Blade does not allege that the defendants sold that apparatus or any

20

other material or product to third parties who in turn infringed the '433 Patent.  For at least these reasons, the contributory infringement claim is due to be dismissed.[12]

## B.

The court next turns to Rotor Blade's claims for misappropriation of trade secrets under the Defense of Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836, *et seq.*, and the Alabama Trade Secret Act ("ATSA"), Ala. Code § 8-27-1, *et seq*.  Allegedly, the defendants stole Rotor Blade's materials and information and "went to great lengths to conceal" the alleged theft.  Doc. 5 at 26–28.  The defendants moved to dismiss both claims.

## 1.

As an initial matter, the defendants contend that Rotor Blade's trade secrets claims—and, indeed, all of Rotor Blade's remaining claims—are barred by the doctrine of laches.  Doc. 25 at 14.  They argue that Rotor Blade should have discovered these claims in 2017, when the defendants allegedly began misappropriating Rotor Blade's information and recruiting its employees.  *Id.*  Instead, say the defendants, Rotor Blade sat on its rights until the defendants had successfully established a competing business and preliminarily enforced a

---

[12] As with the induced infringement claim, Rotor Blade inadequately alleges that the defendants knew that third parties would infringe the '433 Patent.  "Like induced infringement, contributory infringement requires knowledge of the patent in suit and knowledge of patent infringement." *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 639 (2015); *see also* note 11, *supra*.

noncompete agreement against the defendants' former employees who now work for Rotor Blade. *Id.* Rotor Blade responds that neither the circumstances nor procedural posture of this case support a laches defense. Doc. 28 at 19–22. Although the defendants do not concede that laches does not apply, *see* doc. 29 at 1, they did not respond in their reply brief to Rotor Blade's laches arguments, *see generally id.*

Laches is an affirmative defense that "serves to bar suit by a plaintiff 'whose unexcused delay, if the suit were allowed, would be prejudicial to the defendant.'" *Black Warrior Riverkeeper, Inc. v. U.S. Army Corps of Engineers*, 781 F.3d 1271, 1283 (11th Cir. 2015) (quoting *Russell v. Todd*, 309 U.S. 280, 287 (1940)). Establishing a laches defense requires the defendant to "show a delay in asserting a right or claim, that the delay was not excusable and that there was undue prejudice to the party against whom the claim is asserted." *Id.* (quoting *Ecology Ctr. of La., Inc. v. Coleman*, 515 F.2d 860, 867 (5th Cir. 1975)). "Given the fact sensitive nature of a laches inquiry," courts are generally "hesitant to bar claims under a laches defense" while ruling on a motion to dismiss. *Motley v. Taylor*, 451 F. Supp. 3d 1251, 1276 (M.D. Ala. 2020) (quoting *Groucho's Franchise Sys., LLC v. Grouchy's Deli, Inc.*, No. 1:14-CV-1725-LMM, 2015 WL 11256661, at *2 (N.D. Ga. July 1, 2015)). Even so, the court may dismiss a complaint for failure to state a claim on laches grounds "provided that the complaint shows affirmatively that the claim is barred." *Id.* (quoting *Herron v. Herron*, 255 F.2d 589, 593 (5th Cir. 1958)).

The defendants' laches arguments fail because the defense is not apparent on the face of the complaint and because the court lacks the evidence necessary to decide the issue. As the defendants recognize, "Rotor Blade does not affirmatively allege when it actually discovered the existence of its claims." Doc. 25 at 20. Although the defendants contend that Rotor Blade's allegations establish that it should have discovered the alleged conduct years ago, the court declines to make this factual determination at this stage. Moreover, Rotor Blade has provided an excuse that plausibly explains why it did not file suit earlier—i.e., the defendants allegedly concealed the nature of their conduct. Doc. 28 at 21 & n.18.

Even if the complaint affirmatively showed that Rotor Blade unreasonably and inexcusably delayed in asserting its rights, the defendants would have to establish undue prejudice, which they cannot do at this point. The defendants argue that Rotor Blade's purported unreasonable delay has prejudiced them primarily by allowing them to invest time and money into their business. Doc. 25 at 14–15. But the defendants do not explain how that prejudice relates to Rotor Blade's purported delay, since the defendants likely would have invested resources into their business regardless of when Rotor Blade filed this lawsuit. *Cf. Motley*, 451 F. Supp. 3d at 1277. And even assuming Rotor Blade's purported delay did cause the defendants prejudice, the court still could not determine the undue prejudice issue absent factual

evidence not yet available.  *See Groucho's Franchise*, 2015 WL 11256661, at *2–*3.  Accordingly, the court declines to apply the doctrine of laches.

**2.**

To plead a DTSA violation, the plaintiff must allege that it "(i) possessed information of independent economic value that (a) was lawfully owned by the plaintiff and (b) for which the plaintiff took reasonable measures to keep secret, and (ii) the defendant used and/or disclosed that information, despite (iii) a duty to maintain its secrecy."  *Trinity Graphic, USA, Inc. v. Tervis Tumbler Co.*, 320 F. Supp. 3d 1285, 1293 (M.D. Fla. 2018) (quotation omitted).  The ATSA similarly requires a plaintiff to "establish that it maintained trade secrets, as defined in the ATSA, and that those secrets are at issue in [the] case."  *Bell Aerospace Servs., Inc. v. U.S. Aero Servs., Inc.*, 690 F. Supp. 2d 1267, 1273 (M.D. Ala. 2010).  The ATSA's statutory language is "nearly identical to that in the DTSA."  *Parker v. Petrovics*, No. 2:19-CV-00699-RDP, 2020 WL 3972761, at *4 (N.D. Ala. July 14, 2020).

To support their motion, the defendants argue that (1) Rotor Blade's "materials" are not a trade secret because they are public information; (2) Rotor Blade has not alleged that it took steps to maintain the secrecy of its purported trade secrets; and (3) Rotor Blade's trade secrets claims are barred by the statute of limitations.  Doc. 25 at 15, 17, 18.  The court considers each argument in turn.

**a.**

At the motion to dismiss stage, the complaint in a trade secret action "need not contain detailed factual allegations; instead it must contain only enough facts to state a claim to relief that is plausible on its face. The factual allegations must be enough to raise a right to relief above the speculative level." *Parker*, 2020 WL 3972761, at *5 (cleaned up). Further, "[w]hether information constitutes a 'trade secret' is a question of fact." *Id.* at *6 (quoting *Penalty Kick Mgmt. Ltd. v. Coca Cola Co.*, 318 F.3d 1284, 1291 (11th Cir. 2003)). For that reason, the issue of "[w]hether something is a trade secret is a question typically 'resolved by a fact finder after full presentation of evidence from each side.'" *Id.* (quoting *Compulife Software Inc. v. Newman*, 959 F.3d 1288, 1311 (11th Cir. 2020)).

Rotor Blade alleges that the defendants misappropriated its trade secrets in the form of valuable "materials and information." Doc. 5 at 26. Rotor Blade defines its materials as "documents such as those that relate to or reflect FAA approved practices, procedures, guidelines, operations, helicopter maintenance, records-keeping, and many other facets associated with operating an aerial vegetation management company." *Id*. at 8. Rotor Blade defines its information to include "its customer lists and identities." *Id.* at 25.

The defendants argue that Rotor Blade's materials and information are not trade secrets because "any information pertinent to FAA standards or requirements

for flying helicopters and rotorcraft for aerial vegetation management is publicly available online" and because Rotor Blade acknowledges that it disclosed its operations manual to the FAA for approval.  Doc. 25 at 16.  At this stage of the litigation, however, the court must accept as true Rotor Blade's allegations that it has invested substantial resources into developing its materials and information and that its materials and information are neither public nor generally well known.  To be sure, Rotor Blade does plead that it submitted its operations manual to the FAA for approval.  But the defendants do not cite any cases that convincingly support the proposition that Rotor Blade's mandated disclosure to a government agency rendered its alleged trade secrets assailable.[13]  And even if submitting the operations manual to the FAA for approval did render the manual nonactionable, it would not follow that Rotor Blade's other materials and information would be as well.  Accordingly, the defendants' first argument for dismissal fails.

### b.

"In a trade secret action, the plaintiff bears the burden of demonstrating both that the specific information it seeks to protect is secret and that it has taken reasonable steps to protect this secrecy." *Parker*, 2020 WL 3972761, at *5 (quoting

---

[13] Indeed, the only case the defendants cite for this point concerns the different issue of whether environmental and health data, which the parties stipulated constituted trade secrets, also constituted "property" under the Fifth Amendment's Takings Clause. *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1001–02 (1984).  Further, the Court ruled in that case that the data in question was a protectable property interest despite a requirement mandating its disclosure to the government.  *Id.* at 1003–04.

*Am. Red Cross v. Palm Beach Blood Bank, Inc.*, 143 F.3d 1407, 1410 (11th Cir. 1998)). However, "[r]easonable efforts to maintain secrecy need not be overly extravagant, and absolute secrecy is not required." *S. Field Maint. & Fabrication LLC v. Killough ("Southern Field I")*, No. 2:18-CV-581-GMB, 2018 WL 4701782, at *6 (M.D. Ala. Oct. 1, 2018) (quoting *AvidAir Helicopter Supply, Inc. v. Rolls-Royce Corp.*, 663 F.3d 966, 974 (8th Cir. 2011)).

The defendants argue that Rotor Blade failed to adequately allege that it took steps to maintain the secrecy of its materials. Doc. 25 at 17. The amended complaint contains the following allegations regarding its efforts to maintain this secrecy: (1) "Rotor Blade engaged in reasonable efforts to maintain the secrecy of its information consistent with 18 U.S.C. § 1836(3)(A)," doc. 5 at 25; and (2) "Rotor Blade engaged in reasonable efforts to maintain the secrecy of its information [consistent with state law]," *id.* at 27. Although the amended complaint need not contain detailed factual allegations, it must contain enough facts to state a plausible claim for relief. *Iqbal*, 556 U.S. at 678. Based on these pleadings, however, Rotor Blade has not alleged any facts at all to support a finding that it took steps to maintain its trade secrets. Even so, consistent with the court's duty to "freely give leave when justice so requires," Fed. R. Civ. P. 15(a)(2), in lieu of dismissal, the court will afford Rotor

Blade leave to amend its complaint to address this deficiency unless the court determines that amendment would be futile because of the statute of limitations.[14]

## c.

Under Fed. R. Civ. P. 8(c), a statute of limitations defense is an affirmative defense that generally must be pled. *Foster v. Savannah Commc'n*, 140 F. App'x 905, 907 (11th Cir. 2005). But "failure to comply with the statute of limitations may be raised on a motion to dismiss . . . when failure to comply with the statute of limitations is plain on the face of the complaint." *Id.* Under the DTSA, an action for the misappropriation of trade secrets "may not be commenced later than 3 years after the date on which the misappropriation . . . is discovered or by the exercise of reasonable diligence should have been discovered. For purposes of this subsection, a continuing misappropriation constitutes a single claim of misappropriation." 18 U.S.C. § 1836(d). This provision is "substantially similar to" the statute of limitations in the Uniform Trade Secrets Act ("UTSA"), on which the DTSA is based. *Adams Arms, LLC v. Unified Weapon Sys., Inc.*, No. 8:16-CV-1503-T-

---

[14] Rotor Blade contends that the defendants "should be judicially and equitably estopped from arguing that [Rotor Blade's] materials are not trade secrets." Doc. 28 at 7 n.1. They say that Signature argued in a related case before Judge Manasco (*Signature Utility Services, LLC, v. Jernigan*, 2:21-cv-00102-AMM) that the same materials were in fact trade secrets. *Id.* Although the court doubts that Signature's "present position is clearly inconsistent with [its] earlier position," as is necessary for judicial estoppel to apply, *Jaffe v. Bank of Am., N.A.*, 395 F. App'x 583, 587 (11th Cir. 2010), the court declines to decide this issue because, regardless of Signature's prior position, Rotor Blade has inadequately alleged that it took steps to maintain the secrecy of its materials and information.

33AEP, 2016 WL 5391394, at *5 (M.D. Fla. Sept. 27, 2016). The ATSA is similarly "drawn from" the UTSA. *Parker*, 2020 WL 3972761, at *12. But unlike the UTSA and DTSA, the ATSA provides that a trade secrets action "must be brought within two years after the misappropriation is discovered or by the exercise of reasonable diligence should have been discovered." Ala. Code § 8-27-5.[15]

The defendants argue that the trade secrets claims are time barred because they accrued in either spring 2017, when Lane and Burford allegedly devised their plan to copy Rotor Blade's business model and took an aerial saw to Alabama for duplication, or in spring 2018, when Signature began operating and hiring Rotor Blade's employees. Doc. 25 at 20–21. According to the defendants, Rotor Blade admits to knowing that Lane and other former Rotor Blade employees were sharing trade secrets with Signature because Rotor Blade alleged that "[i]t would have taken Signature months, if not a year, to develop these practices, procedures, and associated paperwork and documentation had they done so legitimately and without misappropriating plaintiff Rotor Blade's Materials." *Id.* at 21 (quoting doc. 5 at 15). Rotor Blade responds that the defendants have set arbitrary dates for the statute of

---

[15] Further, the ATSA, unlike the DTSA, does not adopt the UTSA's language treating a continuing misappropriation as a single claim. *See Heraeus Med. GmbH v. Esschem, Inc.*, 927 F.3d 727, 736–37 (3d Cir. 2019) (noting that Alabama, like North Carolina and Pennsylvania, "opted not to enact that particular provision"). Accordingly, the court is not convinced that it should assume, as the defendants suggest, that a continuing misappropriation constitutes only a single claim—and subsequent misappropriations thus do not restart the limitations period—under both the DTSA and ATSA. Docs. 25 at 19–21; 29 at 9. But because the court finds below that it is not plain from the face of the complaint when the trade secrets claims accrued, the court will not opine on this issue.

limitations, that it has alleged ongoing misappropriations, and that the defendants' have concealed the nature of their conduct.  Doc. 28 at 8–9.

The court agrees that the defendants' proposed accrual dates are largely arbitrary.  As the defendants acknowledge, neither of the proposed dates are alleged in the amended complaint.  Doc. 25 at 20.  Although Rotor Blade does allege that Lane and Burford devised plans to start a competing business in spring 2017, doc. 5 at 9, it is unclear how Rotor Blade would have discovered that plan given the plan's alleged secretive nature.  To be sure, Rotor Blade also alleges that Lane took an aerial saw with him to Alabama.  *Id.*  But the defendants do not explain why, particularly given Lane's position as General Manager, Rotor Blade would necessarily suspect foul play from that alleged conduct.  Nor does the court find persuasive the defendants' alternative argument that Rotor Blade's claims accrued in spring 2018.  True, the en masse departure of its employees between May 2018 and May 2019, *see id.* at 17, combined with Signature's apparent head start, may have eventually notified Rotor Blade of potential trade secret violations.  But the question of exactly when Rotor Blade received that notice is a question better resolved at the summary judgment stage.  Accordingly, because it is not apparent from the face of the complaint that the trade secrets claims are untimely, the court grants Rotor Blade leave to amend to plead allegations regarding the steps, if any, it took to safeguard its trade secrets.

**C.**

Rotor Blade also pleads an unfair competition claim. Allegedly, the defendants unfairly appropriated Rotor Blade's information and materials, targeted its customers, paid its employees to steal confidential information, and violated federal regulations to gain a competitive advantage. Doc. 5 at 31–32. Rotor Blade pleads this claim as a "violation of Ala[.] Code § 8-19-5(27)," *id.* at 31, which is a provision of the Alabama Deceptive Trade Practices Act ("ADTPA"). The ADTPA provides a private right of action to "consumer[s]," Ala. Code § 8-19-10(a), which the ADTPA defines as "[a]ny natural person who buys goods or services for personal, family or household use," *id.* § 8-19-3(2). The defendants argue, and Rotor Blade concedes, that Rotor Blade is not a consumer under the ADTPA and therefore lacks standing. Docs. 25 at 22–23; 28 at 30 ("Defendants are correct that RB lacks standing.").

Still, Rotor Blade argues that its "unfair competition [claim] goes well beyond the ADTPA." Doc. 28 at 29. It observes that the amended complaint pleads that the defendants' unfair competition includes "but [is] not limited to" alleged ADTPA violations and asserts that the defendants failed to address "the other basis of" its unfair competition claim. *Id.* at 29–30. Rotor Blade does not describe what this other basis is, though it asserts that purported part of its claim "survive[s] independent of the ADTPA." *Id.* at 30. However, to the extent Rotor Blade attempts

to state a claim for unfair competition under Alabama common law, it is enough to say that "Alabama law does not recognize a common-law tort of unfair competition." *Alfa Corp. v. Alfa Mortg. Inc.*, 560 F. Supp. 2d 1166, 1175 (M.D. Ala. 2008). Therefore, Rotor Blade's unfair competition claim is due to be dismissed.

## D.

Next, the court turns to Rotor Blade's conversion claim against Lane and Burford. To establish a claim for conversion, Rotor Blade "must show a wrongful taking, an illegal assumption of ownership, an illegal use or misuse of another's property, or a wrongful detention or interference with another's property." *Huntsville Golf Dev., Inc. v. Ratcliff, Inc.*, 646 So. 2d 1334, 1336 (Ala. 1994). "The gist of the action is the wrongful exercise of dominion over property in exclusion or defiance of a plaintiff's rights, where said plaintiff has general or specific title to the property or the immediate right to possession." *Ott v. Fox*, 362 So. 2d 836, 839 (Ala. 1978). Rotor Blade alleges that Lane and Burford wrongfully took its information and documents, illegally asserted ownership of its operations manual, misused its materials, and wrongfully detained its aerial saws so that they could replicate them. Doc. 5 at 32–33. The defendants argue that this claim arises from the same facts underlying Rotor Blade's misappropriation of trade secrets claims and is therefore preempted by the ATSA. Doc. 25 at 24.

"The ATSA preempts any common law conversion claim based on the misappropriation of trade secrets." *Killough v. Monkress ("Killough II")*, No. 5:17-CV-00247-AKK, 2021 WL 1192990, at *8 (N.D. Ala. Mar. 30, 2021). Accordingly, Rotor Blade cannot "pursue both statutory and common law theories of recovery for the defendants' alleged misappropriation of 'trade secrets' or confidential documents." *Allied Supply Co., Inc. v. Brown*, 585 So. 2d 33, 37 (Ala. 1991). "[A]ny common law tort claim that, whatever its name, provides a theory of recovery for the misappropriation of a trade secret is preempted by [the] ATSA." *Arkema Inc. v. Emerson Process Mgmt., LLLP*, 413 F. Supp. 3d 1191, 1194 (S.D. Ala. 2019). Although Rotor Blade essentially concedes that its conversion claim fails to the extent it is based on the alleged misappropriation of its materials and information, Rotor Blade argues nonetheless that the ATSA does not preempt its claim for conversion of its physical property.[16]

The Alabama Supreme Court has not addressed whether the ATSA preempts conversion claims when the defendants allegedly misappropriated tangible property other than confidential documents.[17] Some courts applying Alabama law have

---

[16] *See* doc. 28 at 16 (distinguishing between "conversion of non-tangible information (such as trade secrets) and physical property" and arguing that "[w]hile conversion claims based solely on the misappropriation of trade secrets may ultimately be preempted by the [ATSA], conversion claims related to physical property are not").

[17] *See Arkema*, 413 F. Supp. 3d at 1195 (noting that "the only Alabama [Supreme Court] decision to address the preemptive scope of [the ATSA] . . . does not establish or support the proposition

suggested that a claim for conversion of tangible property may escape preemption if the property has "value independent of the value it accrues as a trade secret." *S. Field Maint. & Fabrication LLC v. Killough ("Southern Field II")*, No. 2:18-CV-581-GMB, 2019 WL 360515, at \*5 (M.D. Ala. Jan. 29, 2019) (citing *Diamond Power Int'l, Inc. v. Davidson*, 540 F. Supp. 2d 1322, 1345 (N.D. Ga. 2007)).  Judge Steele, however, has explained that, in *Allied Supply*, the Alabama Supreme Court "identifie[d] the relevant question as whether the plaintiff is seeking to remedy the misappropriation of its trade secrets, not whether the misappropriation involved tangible property." *Arkema*, 413 F. Supp. 3d at 1195 (citing  585 So. 2d at 37).

Here, Rotor Blade alleges that "Lane and Burford wrongfully detained and interfered with" its property by "secretly transporting" several of its "aerial saws so that Defendants could have a laser fabrication company slavishly copy and fabricate that equipment for Defendants, including, but not limited to, an aerial saw embodying Rotor Blade's patented intellectual property."  Doc. 5 at 33.  The defendants argue that these allegations "sound in the language of trade secrets" because Rotor Blade alleges that the defendants took Rotor Blade's saws to secure purportedly confidential information necessary for copying them.  Doc. 29 at 11–12.

---

that conversion claims are preempted only when no tangible property is involved") (citing *Allied Supply*, 585 So. 2d at 37).

It is true that "[a] misappropriation of a trade secret accomplished by a conversion is still a misappropriation of a trade secret and must be redressed under ATSA and not under the common law theory of conversion." *Arkema*, 413 F. Supp. 3d at 1194. And preemption under the ATSA "is not dependent on whether the 'misappropriated information' constitutes a trade secret." *Parker*, 2020 WL 3972761, at *11. But Rotor Blade has not based this portion of its conversion claim on the misappropriation of a trade secret or other information. Rather, Rotor Blade primarily directs this portion of its conversion claim at the defendants' alleged theft of its saws. In other words, Rotor Blade is not using this claim to "remedy the misappropriation of its trade secrets," *Arkema*, 413 F. Supp. 3d at 1195, or to "pursue both statutory and common law theories of recovery for the defendants' alleged misappropriation of 'trade secrets' or confidential documents." *Allied Supply*, 585 So. 2d at 37.

Further, the court notes that Rotor Blade did not include the alleged theft of its saws in either of its two trade secrets claims. Instead, those claims were for misappropriation of its "materials and information," neither of which it defined to include information relating to the design, measurements, or construction of its saws. *See* Part III.B.2.a. *supra*. Therefore, because Rotor Blade's conversion claim is "not solely based on misappropriation of trade secrets," the claim "is not entirely preempted by the ATSA." *Ferrari v. D.R. Horton, Inc.- Birmingham*, No. 2:14-CV-

01941-LSC, 2017 WL 467472, at *6 (N.D. Ala. Feb. 3, 2017) (quotation marks omitted). Moreover, to the extent that Alabama law requires the court to consider whether "tangible property . . . has value apart from the trade secrets it reflects," *Arkema*, 413 F. Supp. 3d at 1195, the complaint plausibly alleges that Rotor Blade's aerial saws are independently valuable. *Cf. id.* at n.3 ("For example, an industrial machine built with trade secrets presumably has value apart from the trade secrets themselves, in the form of its manufacturing capability.").

In sum, to the extent that Rotor Blade's conversion claim is for the alleged misappropriation of the materials and information underlying its trade secrets claim, the conversion claim is preempted and therefore due to be dismissed. But to the extent that Rotor Blade directs its conversion claim at the alleged theft of its aerial saws, Rotor Blade has adequately stated a claim.

## E.

Rotor Blade pleads tortious interference claims based on the defendants' successful attempts to lure away its employees. It alleges that (1) "Defendant Burford intentionally interfered with the contractual or business relationship between plaintiff Rotor Blade and defendant Lane," doc. 5 at 34, and (2) the "Defendants intentionally interfered with the contractual or business relationship between plaintiff Rotor Blade and at least seventeen of its then-twenty employees . . . ," *id.* at 35. Although tortious interference with contractual and business

relationships are separate torts, Rotor Blade does not separate them in its amended complaint. In any event, the elements largely overlap. To state a claim for tortious interference with business relationships, Rotor Blade's allegations must plausibly show "(1) the existence of a protectible business relationship; (2) of which the defendant knew; (3) to which the defendant was a stranger; (4) with which the defendant intentionally interfered; and (5) damage." *White Sands Grp., L.L.C. v. PRS II, LLC ("White Sands II")*, 32 So. 3d 5, 14 (Ala. 2009). "Tortious interference with contractual relations, on the other hand, differs as to the first element above because '[a] claim of tortious interference with a contractual relationship presupposes the existence of an enforceable contract.'" *Hope For Fams. & Cmty. Serv., Inc. v. Warren*, 721 F. Supp. 2d 1079, 1177 (M.D. Ala. 2010) (quoting *White Sands Grp., L.L.C. v. PRS II, LLC ("White Sands I")*, 998 So. 2d 1042, 1054 (Ala. 2008)).

### 1.

The defendants argue that this claim fails because, in light of Rotor Blade's failure to allege that its employees were bound by employment or noncompete agreements, "Signature could legally hire all of Rotor Blade's employees if it chose to do so."[18] Doc. 25 at 26. But "justification for interference with contractual or

---

[18] The defendants correctly observe that Rotor Blade has not explicitly alleged that it had a contractual relationship with any of its former employees. Doc. 25 at 25 n.12. The defendants do not argue that this omission requires dismissal of Rotor Blade's tortious interference claims. *See*

business relations is an affirmative defense to be pleaded and proved by the defendant." *White Sands II*, 32 So. 3d at 12 (quoting *Parsons v. Aaron*, 849 So. 2d 932, 946 (Ala. 2002)). Thus, "it is not a matter for a motion to dismiss." *Killough v. Monkress ("Killough I")*, No. 5:17-CV-00247-AKK, 2020 WL 262894, at *4 (N.D. Ala. Jan. 17, 2020)).[19]

## 2.

The defendants also argue that most of Rotor Blade's tortious interference claims are barred by the statute of limitations. Alabama law provides a two-year statute of limitations for claims of tortious interference with business and contractual relations.[20] Rotor Blade alleges that the defendants recruited Lane and fifteen other

---

*id.* Even so, the court notes that "tortious interference with a contractual relationship is a claim separate and distinct from interference with a business relationship" and therefore "the absence of a valid contract is not fatal to [a] claim of tortious interference with a business relationship." *White Sands White Sands I*, 998 So. 2d at 1054. And a member of this court has recently declined to dismiss a claim for tortious interference with a contractual relationship "on the basis that [an] employment relationship was 'at will'" because such a relationship is "contractual" under Alabama law." *Brewer v. FreightCar Alabama, LLC*, No. 3:20-CV-01427-CLS, 2021 WL 1383285, at *6 (N.D. Ala. Apr. 13, 2021).

[19] To support their contention that the tortious interference claims fail, the defendants primarily cite *Core Laboratories LP v. AmSpec*, No. CV 16-0526-CG-N, 2018 WL 6200758, at *16 (S.D. Ala. May 10, 2018). Docs. 25 at 26; 29 at 12–13. *Core Laboratories* held that a defendant could not be liable for tortious interference when "it induced the [plaintiff's] employees to quit their jobs" because "[t]he employees in question were at-will employees who were free to leave their positions at any time and did not have non-compete agreements in place." 2018 WL 6200758, at *16. Notably, however, the court decided *Core Laboratories* at the summary judgment stage, not on a motion to dismiss, and it is therefore distinguishable. *Id.* at *1.

[20] *Cagle v. Rubley*, No. 3:14CV04-CSC, 2014 WL 5339314, at *3 (M.D. Ala. Oct. 20, 2014) (citing Ala. Code § 6–2–38(*l*) ("All actions for any injury to the person or rights of another not arising from contract and not specifically enumerated in this section must be brought within two years."));

former Rotor Blade employees at various times in 2018. Doc. 5 at 10–11, 17. Accordingly, the defendants say that any tortious interference claim relating to those employees is time barred. Doc. 25 at 27. Rotor Blade also alleges that the defendants recruited two more of its employees—Steven Langford and Josh Jones— in May 2019. Doc. 5 at 17. The defendants essentially concede that their alleged hiring of Langford and Jones falls within the statute of limitations, though they maintain that they were free to hire at-will employees. Doc. 25 at 27–28.

For its part, Rotor Blade does not dispute that the statute of limitations bars its claims for any alleged tortious interference based on the defendants hiring its employees in 2018.[21] *See* doc. 28 at 11–12. Instead, it argues in response—without citing any authority—that the court should equitably toll the statute of limitations because it did not understand the wrongful nature of the defendants' conduct until 2021. *See id.* "'[A] litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' as to the filing of his

---

*see also Jennings v. City of Huntsville*, 677 So. 2d 228, 230 (Ala. 1996) (applying § 6–2–38(*l*) to a claim for wrongful interference with personal, business, and contractual relationships).

[21] Rotor Blade cites the seventy-fifth paragraph of its amended complaint to show that it has alleged "acts of tortious interference stretching into 2020." Doc. 28 at 11. That paragraph states the following: "Upon information and belief, from in or about 2018 until in or about 2020, Defendants paid at least one Rotor Blade employee a 'significant amount of money' to steal and deliver Rotor Blade['s] confidential information and wrongfully provide that information to Defendants." Doc. 5 at 19. To state the obvious, that allegation has nothing to do with Rotor Blade's claims for tortious interference with its contractual or business relationships.

action." *Weaver v. Firestone*, 155 So. 3d 952, 957 (Ala. 2013) (quoting *Pace v. DiGuglielmo,* 544 U.S. 408, 418 (2005)). Rotor Blade contends that before it interviewed Randy Jernigan earlier this year, it did not know "the 'how' and 'why' surrounding Defendants' hiring away of their employees." Doc. 28 at 12. Allegedly, that "how" and "why" involved maximizing the defendants' "return on their wholesale theft of [Rotor Blade's] practices, procedures, documentation and physical saws."[22] *Id.*

Even assuming the veracity of this contention, Rotor Blade does not explain why its knowledge of the defendants' purported motivations is relevant where, as here, malice is not an element of a tortious interference claim. *See White Sands II*, 32 So. 3d at 14.[23] To the extent that Rotor Blade argues that the defendants' motivations constitute an "extraordinary circumstance" that prevented it from filing this action, *Weaver*, 155 So. 3d at 957, that argument fails because Rotor Blade, according to its own allegations, had knowledge of the defendants' alleged intentional interference regardless of their motivations. In other words, any

---

[22] *See also* doc. 28 at 12 n.4 (asserting that "the reasons Defendants hired away all of [Rotor Blade's] people was so that they could capitalize on Defendants' theft of [Rotor Blade's] materials as well as [Rotor Blade's] proprietary saw").

[23] In contrast, an allegation of "actual malice," among other allegations, is necessary for "a plaintiff to maintain a claim of interference with business relations against an individual officer or employee with regard to 'business or contractual relations to which their corporation or employer is a party.'" *Hand v. Univ. of Alabama Bd. of Trustees*, 304 F. Supp. 3d 1173, 1184 (N.D. Ala. 2018) (quoting *Perlman v. Shurett*, 567 So. 2d 1296, 1297 (Ala. 1990)).

purported extraordinary circumstances did not cause Rotor Blade's untimeliness. Moreover, Rotor Blade has not even attempted to argue that it "diligently" pursued its rights. *Id.* Therefore, equitable tolling does not apply, and Rotor Blade's claims for tortious interference are time barred to the extent they are based on the defendants' alleged hiring of Lane and the fifteen other former Rotor Blade employees in 2018. Doc. 5 at 10–11, 17. But the claims related to the hiring of Langford and Jones in 2019 survive dismissal because the defendants' justification for hiring them is an affirmative defense that must be pleaded and proved.

## F.

The defendants also moved to dismiss Rotor Blade's breach of fiduciary duty and duty of loyalty claim, which Rotor Blade brought solely against Lane. Rotor Blade alleges that as its General Manager, Lane owed it certain duties, which Lane allegedly breached, causing it harm. Doc. 5 at 35. The elements of a breach of fiduciary duty claim are "(1) the existence of a fiduciary duty between the parties; (2) the breach of that duty; and (3) damages suffered as a result of the breach." *Ferrari*, 2017 WL 467472, at *6 (quoting *Regions Bank v. Lowrey*, 101 So. 3d 210, 219 (Ala. 2012)). The defendants argue that the breach of fiduciary duty claim is both preempted by the ATSA and time barred.

**1.**

As explained above, the ATSA preempts any common law claim based on the misappropriation of trade secrets. That includes a claim for "misappropriation of a trade secret accomplished by a breach of fiduciary duty." *Arkema*, 413 F. Supp. 3d at 1194. Rotor Blade contends that the ATSA does not preempt its fiduciary duty claim because it has alleged "acts of disloyalty" that do not relate to the defendants' alleged misappropriation of trade secrets. Doc. 28 at 23–24. Allegedly, while Lane worked for Rotor Blade, he conspired to begin a competing business, used Rotor Blade's resources to take steps toward creating that business, and took Rotor Blade's physical property. Rotor Blade also alleges that after Lane resigned in 2018, he encouraged other Rotor Blade employees to take Rotor Blade's property, usurped one of Rotor Blade's corporate opportunities, stole Rotor Blade's customers, and hired most of Rotor Blade's employees.

Rotor Blade's arguments are only partially persuasive. To the extent that Rotor Blade's theory of liability is that Lane breached a duty by misappropriating trade secrets, the court agrees with the defendants that the ATSA preempts the claim. But to the extent that Rotor Blade's claim is for other alleged conduct, the court agrees with Rotor Blade that the claim is not preempted. *See Southern Field I*, 2018 WL 4701782, at *8; *Ferrari*, 2017 WL 467472, at *6. Still, there is a problem with Rotor Blade's argument. First, some of its allegations are irrelevant to the fiduciary

duty claim.  Because only "*current* employees owe their employer a fiduciary duty of good faith, loyalty, and fair dealing," Lane did not owe Rotor Blade any duty after he resigned in 2018.  *M5 Mgmt. Servs., Inc. v. Yanac*, 428 F. Supp. 3d 1282, 1294 (N.D. Ala. 2019) (emphasis in original).  For that reason, the alleged acts that occurred after Lane's resignation cannot support this claim, which leaves only the allegations about the acts that occurred before his resignation.

## 2.

Those allegations face a second hurdle.  As with Rotor Blade's tortious interference claims, a two-year statute of limitations applies to its breach of fiduciary duty claim.  *Hensley v. Poole*, 910 So. 2d 96, 101 (Ala. 2005) (citing Ala. Code § 6–2–38(*l*)).  Based on Rotor Blade's allegations, it is apparent from the face of the amended complaint that Rotor Blade's only potentially viable breach of fiduciary duty claim is for conduct that occurred in 2018.  For that reason, this claim is barred by the statute of limitations unless it is tolled.  The Supreme Court of Alabama has observed that "even though a breach-of-fiduciary-duty claim will accrue when damage is sustained, the two-year statute of limitations can still be tolled based on the aggrieved party's ignorance."  *Tender Care Veterinary Hosp., Inc. v. First Tuskegee Bank*, 168 So. 3d 33, 38 (Ala. 2014).  Thus, "the timeliness of [a] breach-of-fiduciary-duty claim will ultimately hinge on when [the plaintiff] was damaged and [the plaintiff's] knowledge of the relevant facts."  *Id.*

The defendants argue that Rotor Blade cannot claim ignorance because it either knew or should have known about Lane's alleged breaches of his fiduciary duty when he resigned from Rotor Blade to start Signature in 2018. Docs. 25 at 28; 29 at 14. But unlike the tortious interference claims discussed above, Rotor Blade can plausibly assert ignorance because it is not apparent from the face of the complaint when Rotor Blade learned of Lane's alleged breaches of duty. And the defendants do not explain why an employee's decision to leave his employer for a competitor would necessarily put the former employer on notice that the employee had behaved disloyally. Indeed, Rotor Blade points to several instances of Lane's alleged efforts to conceal any potentially duplicitous conduct, all of which could have prevented it from knowing that it had a claim. *See* doc. 28 at 23.

Even so, the court is not prepared to conclude at this juncture that the statute of limitations should be tolled. "[W]hether equitable tolling is applicable in a case generally involves a 'fact-specific inquiry.'" *Weaver v. Firestone*, 155 So. 3d 952, 958 (Ala. 2013) (quoting *Spitsyn v. Moore*, 345 F.3d 796, 799 (9th Cir. 2003)). As with its tortious interference claim, Rotor Blade contends in its response brief that it "did not learn of Defendants' conduct until February 2021" when it interviewed Randy Jernigan. Doc. 28 at 23. Although the defendants correctly observe that this contention is not alleged in the amended complaint, doc. 29 at 7, a plaintiff "need not make any allegations about equitable tolling in [its] complaint." *Villarreal v.*

*R.J. Reynolds Tobacco Co.*, 839 F.3d 958, 971 (11th Cir. 2016). Nonetheless, the court agrees with the defendants that it should not "blindly accept" Rotor Blade's unpleaded contentions on this fact-sensitive matter. Doc. 29 at 7. Accordingly, the court will permit Rotor Blade's breach of fiduciary duty claim to go forward so that the parties may submit evidence on the elements of tolling at the summary judgment stage. But for the reasons explained above, the court will do so only for claims that Lane breached his duty by engaging in conduct, other than misappropriating trade secrets, that occurred before he resigned from Rotor Blade.

## G.

Finally, Rotor Blade pleads a civil conspiracy claim against Lane and Burford. Allegedly, Lane and Burford conspired to commit the torts alleged in the complaint. Doc. 5 at 28–30. To state a claim, Rotor Blade must allege "concerted action by two or more persons to achieve an unlawful purpose or lawful purpose by unlawful means, with actual knowledge and intent to bring about the purpose." *Bell Aerospace*, 690 F. Supp. 2d at 1280–81 (citing *Singleton v. Protective Life Ins. Co.,* 857 So. 2d 803, 814 (Ala. 2003)). Under Alabama law, "a conspiracy itself furnishes no cause of action. The gist of the action is not the conspiracy but the underlying wrong that was allegedly committed." *Allied Supply*, 585 So. 2d at 36. In other words, "[i]f the underlying cause of action is not viable, the conspiracy claim

must also fail." *Id.* This principle applies to underlying causes of action alleged under both state and federal law. *Bell Aerospace*, 690 F. Supp. 2d at 1281.

For the reasons explained above, Rotor Blade's conspiracy claim fails as to its underlying claims for DTSA and ATSA violations, unfair competition, conversion to the extent preempted by the ATSA, tortious interference against Burford for hiring Lane, tortious interference against all the defendants for hiring Rotor Blade's employees in 2018, and breach of fiduciary duty against Lane to the extent preempted by the ATSA.[24] However, the amended complaint pleads plausible causes of action against the defendants for conversion, tortious interference, and breach of fiduciary duty to the extent they are neither preempted nor time barred. And Rotor Blade has alleged enough facts to make its conspiracy claim plausible as to those surviving underlying causes of action.

The defendants argue that Rotor Blade's civil conspiracy claim is itself time barred. Doc. 25 at 31. "[A] claim for civil conspiracy must be brought within two

---

[24] Rotor Blade pleads that Lane and Burford conspired to commit patent infringement, doc. 5 at 30, and emphasizes in its response brief that patent infringement is a tort, doc. 28 at 31. But federal courts across jurisdictions agree that federal law preempts state law claims for patent-based civil conspiracy. *Nat. Alternatives Int'l, Inc. v. Allmax Nutrition, Inc.*, 258 F. Supp. 3d 1170, 1187 (S.D. Cal. 2017) (citing *Conceal City, L.L.C. v. Looper Law Enf't, LLC*, 917 F. Supp. 2d 611, 618 (N.D. Tex. 2013). To the extent Rotor Blade pleads a federal conspiracy claim, "there is no statute in the federal laws concerning patents which gives rise to a cause of action for 'conspiracy.'" *Cognitronics Imaging Sys., Inc. v. Recognition Research Inc.*, 83 F. Supp. 2d 689, 699 n.15 (E.D. Va. 2000). The Federal Circuit has thus observed that "conspiracy to infringe a patent . . . has no basis in law." *Int'l Rectifier Corp. v. Samsung Elecs. Co.*, 361 F.3d 1355, 1361 (Fed. Cir. 2004) (citing *Cognitronics Imaging*, 83 F. Supp. 2d at 699 n.15).

years of its accrual." *Eaton v. Unum Grp.*, No. 7:15-CV-01204-LSC, 2015 WL 5306185, at *4 (N.D. Ala. Sept. 10, 2015) (citing Ala. Code § 6–2–38(*l*)). But given that it is not apparent from the face of the amended complaint when Rotor Blade's above-listed surviving causes of action accrued, dismissal of its civil conspiracy claim based on those causes at this stage would be inappropriate. *See id.*

## III.

For the foregoing reasons, the defendants' motion to dismiss Rotor Blade's amended complaint, doc. 25, is due to be granted solely as to (1) the patent claims in Count I for direct and willful infringement occurring before the '433 Patent issued, direct and willful infringement against Lane, induced infringement, and contributory infringement; (2) the unfair competition claim in Count V; (3) the conversion claim in Count VI to the extent preempted; (4) the tortious interference claim against Burford in Count VII; (5) the tortious interference claim in Count VIII to the extent time barred; (6) the fiduciary duty claim in Count IX against Lane to the extent preempted; and (7) the conspiracy claim to the extent there is no underlying tort.

The motion is due to be denied, however, as to (1) the claim in Count I against Signature for willful patent infringement occurring after the '433 Patent issued; (2) the conversion claim in Count VI to the extent not preempted; (3) the tortious interference claim in Count VIII to the extent not time barred; (4) the fiduciary duty claim in Count IX to the extent not preempted; and (5) the conspiracy claim to the

extent the underlying torts survived dismissal. Additionally, the claim in Count I against Signature for direct patent infringement occurring after the '433 Patent issued survives because the defendants did not move to dismiss it. Doc. 25 at 1. Finally, the court grants Rotor Blade leave to amend its complaint as to the claims in Counts II and III to address whether it took steps to safeguard its trade secrets. Rotor Blade has until July 13, 2021, to file an amended complaint. The court will treat Rotor Blade's failure to file an amended complaint as a decision to abandon its trade secrets claims. A separate order consistent with this opinion will be entered.

**DONE** the 23rd day of June, 2021.

**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE